IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

IN RE: THE MARRIAGE OF

FAMILY DIVISION

FRANK TORRES,

CASE NO: 07-27064 FC 19

       Petitioner/Husband,

and

PRISCILLA NACHON TORRES
a/k/a PRISCILLA NACHON,

       Respondent/Wife.

_____/

## MARITAL SETTLEMENT AGREEMENT

**THIS AGREEMENT** is made and entered into this _13th_ day of December , 2007, by

and between PRISCILLA TORRES NACHON, a/k/a PRISCILLA NACHON, a resident of Miami-

Dade County, Florida hereinafter referred to as "Wife," and FRANK TORRES, a resident of Miami-

Dade County, Florida, hereinafter referred to as "Husband".

## RECITALS

**WHEREAS**, the parties were married in Coral Gables, Florida on October 12, 2001; and

**WHEREAS**, there have been two children born of this marriage, to wit: Frank Carlos Torres,

born on December 28, 2003, now age three; and Alejandro Javier Torres, born on March 1, 2006,

now age one, and no other children are contemplated; and

**WHEREAS**, the parties desire to live separate and apart from each other, and have agreed

to live separately and apart during the rest of their lives; and

**WHEREAS,** the parties desire to settle and adjust forever all rights of support and

maintenance, property and other rights, claims or demands arising out of their marital relationship,

F.T.

P.T.

2.  **REPRESENTATION**

2.1  <u>Acknowledgment of Legal Representation by Wife</u>.   The Wife acknowledges that she has been represented by counsel of her own selection in the negotiation of this Marital Settlement Agreement. The Wife has been represented by Laura M. Fabar, Esquire of Laura M. Fabar & Associates, L.L.P., 2601 South Bayshore Drive, Suite 600, Coconut Grove, Florida 33133-5432. The Wife has discussed each provision of this Agreement with her counsel and has had the opportunity to ask questions of her attorney with regard to same.

2.2  <u>Acknowledgment of Legal Representation by Husband</u>. The Husband acknowledges that he has been represented by counsel of his own selection in the negotiation of this Marital Settlement Agreement.  The Husband has been represented by Gregory N. Anderson, Esquire, Stack Fernandez Anderson & Harris, P.A., 1200 Brickell Avenue, Suite 950, Miami, Florida 33131-3255. The Husband has discussed each provision of this Agreement with his counsel and has had the opportunity to ask questions of his attorney with regard to same.

2.3  **Tax Advice**. Both parties have been advised by their respective counsel that they should receive tax advice regarding the tax consequences of this Agreement prior to the signing of this Agreement and have had opportunity to do so.

3.  **ACKNOWLEDGMENT OF PARTIES**. The parties acknowledge that they have read the Agreement. The parties further acknowledge that this Agreement was executed and agreed to with the full understanding of its purpose and meaning; and the execution of this Agreement is the free and voluntary act of each of the parties hereto. This Agreement is entered into without undue



F.T.



P.T.

settlement agreement with financial affidavits and their general and approximate knowledge of the other party's income, assets, and liabilities.

6.1    Notwithstanding the representations of the financial affidavit, each party has a general and approximate knowledge of the income, assets, and liabilities of the other party and, as such, has not relied on the other party's financial affidavit.

### 7.    SHARED RESPONSIBILITY AND THE WELFARE OF THE MINOR CHILDREN

7.1    **Shared Parental Responsibility**. Each party recognizes the deep love, devotion and dedication of the other to their minor children. Each recognizes that the other has a right to and shall fully participate with the other and with the children in all important matters pertaining to the children's health, welfare, education and upbringing. The parties agree that they shall have shared parental responsibility for the minor children, and that all major decisions regarding health, education, summer camp, vacations and/or travel unaccompanied by parents, welfare and upbringing of the children shall be made on a joint decision making basis.

7.2    **Emergency Decisions**. It is understood that some decisions must be made on an emergency basis, and in such event, each party acknowledges that he or she has full confidence in the other's ability to make a unilateral decision in the event of an emergency for the children's welfare which otherwise would be a joint decision of the parties.

7.3    **Entitlement to Participation**. Both parties shall be entitled to participate with and attend and each shall notify the other of special activities in which the children is/are engaged, such as religious activities, school programs, sports events and other extracurricular



F.T.

P.T.

*In Re: The Marriage of Frank Torres and Priscilla Nachon Torres*

are, each party shall be informed of where he or she can have telephonic communication with the children, and shall have the right to have such communication.

7.8     **Failure to Exercise Is No Waiver**. The right of the parent with whom the children do not maintain the primary physical residence to have contact and access with the children is the right of that parent, and failure to exercise such right on particular occasions shall not be deemed or construed to be, nor constitute a waiver of that parent's future rights. Both parents will recognize and respect the reasonable schedule(s) of their children and will give due regard to their activities and events and to the schedule and convenience of each party.

7.9     **Entitlement to Complete Information**. Each parent shall be entitled to complete and detailed information from all pediatricians, physicians, dentists, consultants or specialists attending the minor children for any reason whatsoever, and to be furnished with copies of any reports given to one or the other parent. Each shall be entitled to complete and detailed information from all teachers, schools, summer camps or other institutions which the children may attend or become associated with in any way. Each of the parents should be furnished with copies of all reports given to the other. Nothing contained herein shall be construed as a waiver of the children's privilege of confidentiality in communications between any physician or mental health professional and the children.

7.10    **Name to be Maintained**. Neither of the parties shall at any time for any reason cause the minor children to be known or identified or designated by any name other than Torres and neither shall permit the designation of "father" or "mother" or their equivalent to be used by the minor children with reference to anyone other than the parties hereto.



F.T.



P.T.

7.13   **Other Parenting Provisions**. The youngest son will continue to be cared for at the Mother's place of business during the week until both parties decide that he should commence school or be involved in pre-school care.

7.14   **Visitation Schedule**:

7.14.1   **Agreement to Alternate Holidays**. The parties agree that the parties have agreed to alternate all recognized public holidays. By alternating visitation, the parties contemplate that should one parent have the children during a particular holiday in one year, then the other parent should have the children for that holiday in the next year.

7.14.2   **Special Holidays**. As for December 23rd through December 24th at 6:00 p.m. every year, the minor children shall be entitled to be with their Mother from December 23rd through and including 6:00 p.m. on December 24th. Thereafter, the Husband shall pick up the children at 6:00 p.m. Then, on odd years, the Husband shall return the children to the Mother's home on December 24th by 10:30 p.m. The minor children shall be entitled to sleep at their Mother's home every December 24th on odd years and shall remain with their Mother December 25th until 1:00 p.m. when the Father shall be entitled to have visitation with the children until December 26th in the morning when he returns the minor children to the Mother, either at her home or at her place of business. On even years, the Father may keep the children overnight on December 24th (commencing at 6:00 p.m.) and returning them to the Mother's home by December 25th at 1:00 p.m. and the Mother shall be entitled to overnight visitation with the children until December 26th at 1:00 p.m.



F.T.



P.T.

7.14.3 **Mother's and Father's Day**. The Mother shall be entitled to have the children the entire day on Mother's Day including the overnight visitation with their Mother on that day. The Husband shall have be entitled to have the children the entire day on Father's Day including the overnight visitation with the children on that day.

7.14.4 **Parent's Birthday**. The Husband shall have visitation with the children on his birthday. The Wife shall have visitation with the children on her birthday.

7.14.5 **Child's Birthday**. Both parents shall be entitled to spend time with the children on the child's birthday.

7.14.6 **Summer Vacations**. Each parent shall be entitled to take the children on a continuous one-week vacation and must provide two weeks' advance notice to the other parent and to provide the other parent with an itinerary, telephone numbers, and method of travel and locations where they will be staying. As to the rest of the Summer, the visitation that is currently in place shall remain in place with the exception of each of the parties' one-week right to have their independent Summer vacation.

7.14.7 **Spring Vacation**. In the event the children are provided a Spring or Easter vacation, the parties shall share the vacation time equally between them but alternating Easter Sunday.

7.14.8 **Specific Days Govern if Conflict**. It is agreed that the specific provisions for holidays, birthdays, Mother's Day, Father's Day and the like shall supersede and overrule, if a conflict exists, the general weekend and weekday visitation provisions set forth herein.





influence, fraud, coercion, or misrepresentation, each party believing the terms to be fair, just and reasonable.

### 4.    FULL DISCLOSURE BY HUSBAND

4.1    **Disclosure**.  The Husband represents that he has made full and complete financial disclosure to the Wife of his income, assets, liabilities, and expenses as they exist as of the time of the execution of this Agreement, and those representations are reasonably accurate with reference to the Husband's financial condition.

4.2    **Ability**.  The Husband represents that he has the ability to comply with all the terms of this Agreement.

### 5.    FULL DISCLOSURE BY WIFE

5.1    **Disclosure**.  The Wife represents that she has made full and complete financial disclosure to the Husband of her income, assets, liabilities, and expenses as they exist as of the time of the execution of this Agreement, and those representations are reasonably accurate with reference to the Wife's financial condition.

5.2    **Ability**.  The Wife represents that she has the ability to comply with all the terms of this Agreement.

### 6.    ENTITLEMENT TO RECEIVE ADDITIONAL DISCOVERY.  Both parties

have been advised by their respective counsel of their entitlement to receive additional discovery regarding the other party's income, assets, and liabilities. Each of the parties has knowingly waived their respective right to receive further discovery as each of the parties wishes to enter into this


F.T.

P.T.

activities and programs and important social events in which the children is/are involved or may become engaged or involved.

7.4 **Encouragement of Love and Affection**. Each party shall exercise, in the utmost of good faith, his and her best efforts at all times to encourage and foster the maximum relations of love and affection between the minor children and the other party. Neither party shall in any way impede, obstruct, nor interfere with the exercise of the other's right of companionship with the minor children, and neither of them at any time shall disparage or criticize the other parent, nor allow any other to do so, in the presence of the minor children.

7.5 **Reasonable Telephonic Communication**. When the children are with the other parent, that parent not with the children, shall have reasonable rights of telephonic communication with the children. Reasonable rights of telephonic communication with the children shall not exceed three times each day, absent an emergency.

7.6 **Informed of Whereabouts**. Each party shall keep the other informed of the whereabouts of the minor children when they are out of the Miami-Dade County area for more than twenty-four (24) hours with either of the parties or with others.

7.7 **Notification and Access in the Event of Illness or Accident.** Each party agrees that if either of them has any knowledge of any illness or accident or other circumstances seriously affecting the children's health and general welfare, the father or mother, as the case may be, shall promptly notify the other of such circumstances and the party who was notified shall have immediate access to the children, notwithstanding where the children may be. Wherever the children


F.T.

P.T.

7.11    **Primary Residential Parent**. The minor children's primary residence shall be with the Wife as she is designated the Primary Residential Parent of the parties' minor children and the Husband is granted timesharing as set forth herein.

7.12    **Contact and Access by Father**. The Father shall have reasonable timeshare with the children as set forth herein.

7.12.1 The Father shall have the children on alternate weekends commencing Friday, picking up the oldest son at school and picking the younger child at the Mother's work at 2:45 p.m. and then returning the children on Monday: one to school and the other child to the Mother's place of work where she customarily cares for the minor child. Then, on those weeks that the Father does not have weekend visitation with the minor children, on Wednesday, he picks up both children in the afternoon: one from school and the other at the Mother's place of work and stays with the children until Friday morning when he takes the oldest child to school and thereafter, takes the younger child to the Mother's place of work, where she cares for the younger child.

7.12.2 On the weeks that Father has weekend visitation with the minor children, the Father is entitled to an additional overnight on Tuesday evening. The Father will be picking up his older son from school and the youngest child from the Mother's place of work, having them for overnight visitation on that Tuesday and then returning the oldest son to school and returning the youngest child to the Mother's place of business the next morning (Wednesday morning).





FROM :RUSON & BANGK Case 12-01130-LMI Doc 1-15 Filed 02/22/12 Page 10 of 27 11:23AM P12

*In Re: The Marriage of Frank Torres and Priscilla Nachon Torres*
*Miami-Dade County Circuit Court Case No.: 07-27064 FC 19*
*Page 11*

7.14.9 **Mediation**. In the event of the disagreements as to the best interests of the children, the parties agree to use good faith to discuss same and resolve same. In the event they cannot do so, they agree to schedule an appointment with an agreed upon Mediator that shall be paid equally by the parties. Mediation is not a condition precedent prior to the filing of any action in Family Court regarding the children.

## 8. ADDITIONAL CHILD SUPPORT

8.1 **School Payment**. Both parties agree to pay fifty percent (50%) of Frank Carlos' Montessori school, including, but not limited to, tuition, registration, book costs, extra-curricular activities, supplies, special classes (such as Spanish), uniforms, lunch costs, etc. Once Alejandro Javier is at an age that both parties agree that he should commence to attend the Montessori school with his brother, the parties agree to each be fifty percent (50%) responsible for the previously explained expenses that are associated with this child's attendance at the same school. The parties also contemplate that during the Summer, except for vacation periods, it is their intention that the children attend the Montessori summer session. When the children can no longer attend the Montessori school or the parties agree to change the school, the parties shall continue to be each fifty percent (50%) responsible for all school expenses, including, but not limited to, registration, tuition, book costs, extra-curricular activities, supplies, special classes, lunch costs, etc.

8.2 **Life Insurance**. In order to secure child support benefits, each party agrees to maintain Three Hundred Thousand Dollars ($300,000.00) life insurance on their life and to designate the other parent as the beneficiary. The obligation to maintain life insurance continues until the minor children each the age of twenty-five (25). Once the oldest child reaches the age


F.T.

P.T.

eighteen (18) and has graduated from high school, then each parent shall be entitled to change the beneficiary so that the adult child is entitled to receive fifty percent (50%) of the Three Hundred Thousand Dollars ($300,000.00) life insurance policy directly, not designating the parent for that fifty percent (50%) portion of the life insurance. Once the youngest child also reaches the age of eighteen (18) and has graduated from high school, both children shall be designated as each being the fifty percent (50%) beneficiary of the total amount of said policy and said policy shall be maintained until the children reach twenty-five (25) years of age. Each party shall provide proof to the other party of same on an annual basis.

8.3 **Additional Support Agreement Regarding Medial Insurance.** In calculating the child support guidelines, both parties acknowledge their obligation to contribute to the cost of the children's health insurance, which is presently provided through the Wife's employment, with each party paying fifty percent (50%) of the present cost of Three Hundred Ninety-Nine Dollars ($399.00) per month. In addition, both parties recognize that in the event that the cost of the health insurance increases for the Mother, each of the parties shall adjust their respective credits and payments for child support so that the Father contributes fifty percent (50%) to the increase of any such costs of health insurance for the children. This payment by the Husband to reimburse the Wife for his fifty percent (50%) share shall commence on January 1, 2008 and shall be an additional payment in addition to the basic child support payment.

8.4 **Health Insurance Expenses.** All reasonable and necessary healthcare expenses for the minor children, including health, dental, hospitalization, prescription, doctors, dentists, glasses, orthodontists, psychiatric and/or psychological care shall be paid one-half by each


F.T.

P.T.

parent. All reimbursements shall occur within ten (10) days of presenting proof of payment and invoice.

### 9. CHILD SUPPORT

 9.1 **Amount and Commencement of Payments**. The Husband shall commence the payment of child support to the Wife, on the first day of January 2008 and continuing on the first day of each month thereafter. The Husband shall pay to the Wife, for the support and maintenance of the minor children of the parties, the sum of Two Hundred and Forty Dollars ($240.00) per month as basic guidelines child support based on the forty-three percent (43%) overnights pursuant to the visitation agreement. In the event that the Husband does not exercise the complete overnight visitation during each calendar year, then the Wife shall be entitled to a retroactive modification of the basic child support figure for that year, without a deviation for overnights, based on the net income contained in the child support guidelines giving credit for the monthly amounts paid as basic child support.

 9.1.1 Presently, the Wife pays the entire cost of the child care expenses for Alejandro Javier and her payment is without prejudice to her claim that the Husband is obligated to contribute to same in any future modification.

 9.2 **Cessation of Payments**. The Husband's obligations for each child's support shall cease upon the occurrence of the first of the following events:

 9.2.1 the death of the child or either party;

 9.2.2 attainment of the child's eighteenth (18) birthday if the child has graduated from high school or if the child has not graduated, it shall continue for so long as the





minor child has an expectation of graduation before his nineteenth (19) birthday, then the support shall continue until graduation;

  9.2.3 the marriage of the child;

  9.2.4 entry of the child into the military service of the United States for a continuous period of time of one (1) year or more;

  9.2.5 the child becoming completely self-supporting;

  9.2.6 by Court order.

 9.3 **Waiver Through Central Depository**. The Husband shall pay child support directly to the Wife by direct deposit by bank transfer to the Wife's account. The parties waive payment through the Central Depository.

 10. **ALIMONY**

 10.1 **Waiver of Alimony**. Each party waives all rights to past, present or future alimony of any nature, kind or description and each has been advised by counsel as to their entitlement under the laws of the State of Florida to alimony and to their right to secure modifications of that alimony application to a court of competent jurisdiction subsequent to the entry of a final judgment. Each party acknowledges that they have been advised of their right to waive entitlement to alimony or entitlement to modify alimony. Each party understands and does hereby intend to waive their right to receive alimony from each other and understands and agrees that this waiver is absolute and will bind them forever. This alimony and modification waiver provision is not modifiable regardless of any change in circumstances of either of the parties.


F.T.

P.T.

11.  **MEDICAL INSURANCE**

11.1  **Conversion Policy**. The Husband is currently on the Wife's health insurance policy, which is available to her through her employer. The Husband shall contact Nachon Enterprises in order to obtain the documents that he needs to convert his policy through COBRA into an individual policy. Commencing from January 1, 2008, it shall be the Husband's sole responsibility to pay any costs associated with his health insurance and, in the event that the Wife has prepaid his health insurance for that month, the Husband owes her reimbursement of the prepaid health insurance premium by the Wife.

12.  **PROPERTY DIVISION AND RECOGNITION OF THE PARTIES' EQUITABLE DISTRIBUTIVE RIGHTS TO MARITAL ASSETS AND LIABILITIES**

In order to achieve an equitable distribution of all of the marital assets and liabilities, the parties agree to the division of their assets and liabilities set forth below. For the purpose of arriving at such an equitable distribution, the parties accept each other's representation that all assets and liabilities have been disclosed and that each has had ample opportunity to discover and therefore accepts the present value of the various assets as was represented by the parties, each to the other respectively. The foregoing represents all of the parties' assets.

12.1  **Marital Residence**

12.1.1  **Ownership and Legal Description**. The parties jointly own, as tenants by the entireties, their former marital residence located at 1215 Palemero Avenue, Coral Gables, Florida 33134.


F.T.

P.T.

12.1.2 **Conveyance to Spouse**. At the time of dissolution of marriage, the Husband and Wife shall execute a quit claim deed in favor of the Wife transferring all of his right, title and interest in and to the said marital home only subject to the outstanding mortgage.

12.2 **Apartment**. The parties also jointly own an apartment located at 9375 Fountainbleau Boulevard, Apartment L-314, Miami, Florida, which is titled in the parties' joint names as tenants by the entireties. At the time of dissolution of marriage, the parties shall execute a quit claim deed in favor of the Husband transferring all of the Wife's rights, title and interest to said apartment to the Husband.

12.3 **Transfer of Title and Expenses**. Commencing from the date that the parties are obligated to transfer by quit claim deed the properties to each other as set forth in the preceding paragraphs, then the party receiving the property shall be solely responsible for all expenses incurred in connection with the property including, but not limited to, mortgage payment, taxes, maintenance, insurance, and all other costs associated with the property to which the recipient of the property indemnifies and holds the other party harmless. Any escrow balance on the mortgage and all utility deposits shall belong to the party receiving the property. In the event the Husband vacates the marital home in January 2008, then he will be responsible for fifty percent (50%) of utility bills, household food, gardener, Montessori, and mortgage payments incurred since November 2007 through any other month he still resides at the former marital home.

12.4 **Indemnification and Hold Harmless**. Within sixty (60) days from the date of entry of the Final Judgment of Dissolution of Marriage, the Wife shall remove the Husband from the liabilities related to the mortgage liability and utilities on the former marital home and, likewise, the Husband shall be obligated to remove the Wife from the mortgage liability and utilities





FROM : RUSON & BANGK Case 12-01130-LMI AX Doc 1-15 Filed 02/22/12 Page 16 of 27 11:26AM P18

*In Re: The Marriage of Frank Torres and Priscilla Nachon Torres*
*Miami-Dade County Circuit Court Case No.: 07-27064 FC 19*
*Page 17*

associated with the apartment in Fountainbleau. The parties agree to cooperate to enable the other party to accomplish this within the time frame set forth in this Agreement. In the event that either party does not refinance and release the other party from the mortgage within sixty (60) days, the property must be listed for sale by the Court or the parties at a reasonable price to accomplish a quick sale.

12.5 **Exclusive Use and Possession**. The Husband shall vacate the marital home no later than January 7, 2008. From that date forward until such time as the Wife receives her quit claim deed pursuant to equitable distribution, the Wife shall have sole and exclusive possession of the marital home until she becomes the sole owner of the home. Likewise, the Husband shall have exclusive possession, commencing January 7, 2008, of the Fountainbleau apartment until such time as he receives the quit claim deed giving him title to the home pursuant to equitable distribution.

12.6 **Existing Property Insurance** Each of the parties shall cooperate in order to transfer the ownership of the existing property insurance to reflect the new ownership so that the Wife shall become the sole owner of the property insurance for the marital home and the Husband shall be sole owner of any insurance pertaining to the Fountainbleau condominium.

12.7 **Existing Personal Property Insurance**. In regard to policies of insurance, such as personal property insurance, automobile, fire and theft, jewelry floaters and so forth, such policies shall not be canceled and shall remain in full force and effect until their annual expiration date. Upon the expiration of each insurance policy, Each party shall be responsible for securing whatever insurance coverage they each deem proper for their property. The party who initially secured the insurance, shall have an affirmative duty to notify the other at least thirty (30) days prior


F.T.

P.T.

FROM :RUSON & BANGK Case 12-01130-LMI AX Doc 1-15 Filed 02/22/12 Page 17 of 27 11:27AM P19

*In Re: The Marriage of Frank Torres and Priscilla Nachon Torres*
*Miami-Dade County Circuit Court Case No.: 07-27064 FC 19*
*Page 18*

to the expiration of the policies so that each shall have the opportunity to secure replacement policies.

### 12.8 **Personal Property**

12.8.1 **Joint Savings**. The parties have already divided the money that was contained in the joint savings account. The interest that accrued during calendar year 2007 in said account, will be subject to Federal Income Taxes. Once the Wife receives the 1099 showing that the interest that accrued from the joint savings during 2007, then the Husband shall reimburse the Wife for eighty percent (80%) of the taxes that she obligated to pay on the interest earned on the joint account during calendar year 2007. The Husband shall reimburse the Wife for this money within ten (10) days of presenting the information necessary to calculate the tax on the money.

12.8.2 **Century Bank Investment**. The Wife shall be entitled to keep the Century Bank investment and the Husband has already received credit for same in the equitable distribution lump sum payment.

12.8.3 **Safe Deposit Box**. The Husband shall keep the cash that is located in the parties' safe deposit box and the parties shall close said safe deposit box and any dues for same shall be paid 50/50.

12.8.4 **Retirement Accounts**. Each party shall keep his or her own IRAs and any other retirement accounts.

### 12.9 **Other Personal Property**.

12.9.1 The Wife shall keep the items located in the Marital Residence with the exception of the listed items set forth herein which the Husband is entitled to receive.





12.9.2 The Husband shall keep the following items located in the Marital

Residence:

    12.9.2.1   Master bedroom television, DVD player and RCA radio.

    12.9.2.2   Alejandro's bedroom set.

    12.9.2.3   Master bedroom set: bed, night tables, chaise, armoire, chest, and dresser.

    12.9.2.4   Blue mirror (in living room).

    12.9.2.5   Archival CD of all of the children's and family pictures.

    12.9.2.6   Sakura plate set, knife set, and utensils.

    12.9.2.7   Alcohol bottles (but not the bar).

    12.9.2.8   Domino table with dominos.

    12.9.2.9   Husband's sports memorabilia.

    12.9.2.10  Husband's sports equipment including his golf clubs.

    12.9.2.11  Total gym workout equipment (excluding Wife's sports glider).

    12.9.2.12  Husband's premarital furniture, which includes two sofas, two lamps, two side tables, dining room table and chairs, one center table, one small TV wall unit.

12.9.3 The parties agree that, except as specifically set forth in this paragraph 12.9 and/or elsewhere in this Agreement, the parties have equitable divided and apportioned between them all of the personal property, including their jewelry, owned by either of the parties, or the


F.T.

P.T.

FROM :RUSON & BANGK Case 12-01130-LMI AX Doc 1-15 Filed 02/22/12 Page 19 of 27 11:28AM P21

*In Re: The Marriage of Frank Torres and Priscilla Nachon Torres*
*Miami-Dade County Circuit Court Case No.: 07-27064 FC 19*
*Page 20*

parties jointly, and either party shall make any claim to property owned by or in the possession of the other party.

12.10  **Corporate Interests**. Each party shall continue to own whatever corporate interests he/she has.

12.11  **Lump Sum Payment to Achieve Equitable Distribution**. In order to achieve an equitable distribution of the marital estate, the Wife agrees to pay the Husband a lump sum payment of One Hundred Forty-Five Thousand Two Hundred and Fifty Dollars ($145,250.00) within sixty (60) days after the entry of the final judgment dissolving the parties' marriage. The parties understand that the lump sum payment is designed to achieve an equitable distribution of their marital estate. As such, payment of the lump sum is a non-taxable event. Stated otherwise, the lump payment is not taxable to the Husband as income, and it is not deductible by the Wife. In the event the Wife does not make the required payment in a timely manner, the balance owed to the Husband shall begin to bear interest at the rate of seven percent (7%) per annum effective as to the date following the last day on which the lump sum payment was due.

12.11.1  The Wife also agrees that the lump sum payment is not dischargeable in bankruptcy, and is binding on her estate in the event she dies before this obligation has been satisfied in full.

12.12  **Other Debts and Liabilities**. The parties represent that they only have two joint credit cards; one is a Macy's credit card and the other one is a Citibank MasterCard. The Wife is the principal card holder and, as such, she shall be responsible for paying this joint credit card debt which is approximately Nine Thousand Dollars ($9,000.00). From this day forward, the Husband


F.T.

P.T.

FROM :RUSON & BANGK Case 12-01130-LMI AX Doc 1-15 Filed 02/22/12 Page 20 of 27 11:28AM P22

In Re: The Marriage of Frank Torres and Priscilla Nachon Torres
Miami-Dade County Circuit Court Case No.: 07-27064 FC 19
Page 21

agrees he shall not cause any charges any all whatsoever to be placed on either of these two cards and, in the event he does so, he must immediately indemnify and hold the Wife harmless and reimburse her. The Wife shall take immediate steps to cancel the Husband's ability to place charges on said accounts.

12.12.1 The Wife is acknowledges her responsibility for all debts owed to her parents or Nachon Enterprises. The Wife indemnifies and holds the Husband harmless from those debts.

12.13 **Motor Vehicles**. The Wife drives her mother's automobile and the Husband has a leased automobile in his name and he shall indemnify and hold the Wife harmless from any liability arising from his use and/or lease interest in said vehicle.

12.14 **Checking Account**. The parties' checking account has approximately Two Thousand Dollars ($2,000.00) and said funds shall belong solely to the Wife.

13. **TANGIBLE/INTANGIBLE PERSONAL PROPERTY**. Except as specifically provided in this Agreement, neither party shall make any claim to any items of tangible or intangible personal property which are now in the possession or control of the other.

14. **DEBTS**

14.1 **Debts Incurred Since Separation**. The parties do not agree to pay any individual debts or obligations incurred by the other party since the parties' separation on December 12, 2007; and any debts or obligations occurring on or after the aforementioned date shall be the responsibility of the party incurring said debt.


F.T.

P.T.

### 15. **CREDIT**

15.1 **Joint Charge Accounts Terminated**. Joint charge accounts or joint lines of credit shall be forthwith terminated by the parties hereto. Each party shall do all that is necessary to inform and notify all past, present or future creditors under said accounts of such cancellation of joint liability.

15.2 **Prohibition to Pledge Credit**. Except as specifically provided to the contrary in this Agreement, neither party will incur any liability, expense or charges in the future, either through the use of the credit of the other or the name of the other, nor shall one party represent to third persons that they are acting as agent of the other, and each party agrees in support hereof, to forever indemnify and protect, save and hold harmless, the other from any such liability, obligation or expense, including, but not limited to, reasonable attorneys' fees.

### 16. **TAX LIABILITY**

16.1 **Warranties and Representations**. Each party warrants and represents to the other party that he/she has paid all income taxes on all joint returns previously filed by the parties and each party agrees to indemnify and hold the other party harmless for their respective representations in all past tax returns.

16.2 **Agreement to File Jointly and Share Additional Assessments**. The parties have agreed to file a joint income tax return for the year 2007. They further agree to pay all additional tax liability pertaining to their respective income for 2007. The parties are also expecting a refund for calendar year 2006 and upon receipt of the refund check, each party shall be entitled to



F.T.



P.T.

receive fifty percent (50%) of same. Any refunds for 2007 shall also be equally divided between the parties. The cost for the preparation of the 2007 tax return shall be paid equally by the parties.

16.3    **Indemnify and Hold Harmless**. Each party agrees in all respects to forever indemnify and protect, save and hold harmless, the other from any and all liability which may be incurred by virtue of any information furnished by the other for the purposes of filing joint income tax returns; and shall hold the innocent party harmless from any deficiency assessment or tax lien arising out of any joint return previously or hereafter filed by the parties, as well as any related damages and expenses whatsoever, except as provided for herein.

16.4    **Contest of Deficiency**. In the event that the party at fault wishes to contest a deficiency assessment in the United States Tax Court, it shall be the responsibility of that party to timely file the necessary petition(s) on behalf of both parties, and the party so filing shall pay any expenses, including attorneys' fees occasioned thereby. The other party shall execute and deliver whatever documents are reasonably required to authorize the filing of such petition(s). If the other party shall fail to execute and deliver whatever documents are reasonably required, upon reasonable request, this provision shall constitute that party's authorization and power of attorney for such purpose.

17.    **ATTORNEYS' FEES**

17.1    **Each Party Responsible for Own Fees**. Each party to be responsible for any attorney's fees and costs incurred by him or her in the negotiation and preparation of this Marital Settlement Agreement and in representation in the pending dissolution of marriage action, except


F.T.

P.T.

for the cost of court reporter for December 12, 2007, which shall be paid fifty percent (50%) by each party upon receipt of the bill.

18.    **EFFECT OF RECONCILIATION**. This Agreement will remain in full force and effect even if the parties affect a reconciliation, cohabit as Husband and Wife or attempt to reconcile.

19.    **BANKRUPTCY**. Both parties agree and acknowledge that the support obligations set forth herein are not capable of discharge in bankruptcy.

20.    **EXECUTION OF NECESSARY DOCUMENTS**. Each party shall, upon the request of the other, execute, acknowledge and deliver any and all papers or documents or other instruments of release or conveyance, as may be necessary to enable the other Party to effectuate the foregoing distribution of property and other provisions of this Marital Settlement Agreement.

21.    **ENTIRE AGREEMENT**. Each party understands and agrees that this Marital Settlement Agreement constitutes the entire contract of the parties. This Agreement supersedes any prior understandings or agreements between the parties upon the subjects covered in this Agreement. There are no representations or warranties between the parties other than that which is set forth herein.

22.    **JOINT RELEASE**. The Parties, and each of them, on behalf of themselves and each of their successors, predecessors and assigns, hereby fully release and discharge each other from any and all rights, claims, actions, causes of action, suits, protests, petitions, liabilities, debts, dues, sums of money, advances of money, refunds, accounts, covenants, contracts, invoices, controversies, agreements, contracts, promises, warranties, representations, omissions, concealments, damages, judgments, executions, claims or demands, of any nature whatsoever, whether known or unknown,



P.T.

P.T.

FROM : RUSON & BANGK Case 12-01130-LMI Doc 1-1 Filed 02/22/12 Page 24 of 27 11:30AM P26

*In Re: The Marriage of Frank Torres and Priscilla Nachon Torres*
*Miami-Dade County Circuit Court Case No.: 07-27064 FC 19*
*Page 25*

latent or apparent, suspected or unsuspected, foreseeable or unforeseeable, and whether cognizable

at law or equity, which each Party has or may have against the other Party from the beginning of time

to the date of this Marital Settlement Agreement, including, but not limited to, the subject matter of

the pending dissolution proceeding and the marital estate. Nothing contained herein shall constitute

a release or waiver or modification of the rights and obligations of the Parties arising from this

Marital Settlement Agreement.

### 23.  WAIVER OF DOWER AND INHERITANCE RIGHTS

Each of the parties renounce and waive any and all right:

23.1    To inherit any part of the estate of the other at his or her death except for any

charges against the estate as provided in this Agreement;

23.2    To receive property from the estate of the other by bequest or devise, except

under a Will or Codicil dated subsequent to the effective date of this Agreement;

23.3    To act as a personal representative of the estate of the other on intestacy

(unless nominated by another party legally entitled to act).

23.4    To an elective share and/or dower in any property both real and personal,

previously owned, now owned or hereafter owned, by either of them.

### 24.  INCORPORATION INTO FINAL JUDGMENT/SURVIVAL OF AGREEMENT

This Marital Settlement Agreement may be offered into evidence in the pending

dissolution of marriage action between the parties as the full and final Marital Settlement Agreement

of the parties respecting property settlement, alimony, maintenance and any and all other questions,

rights, obligations, benefits and privileges of the parties. The Court shall be requested to approve this


F.T.

P.T.

FROM : RUSON & BANGK Case 12-01130-LMI AX Doc 1-1 Filed 02/22/12 Page 25 of 27 11:31AM P27

*In Re: The Marriage of Frank Torres and Priscilla Nachon Torres*
*Miami-Dade County Circuit Court Case No.: 07-27064 FC 19*
*Page 26*

Agreement and, if approved, this Marital Settlement Agreement shall be incorporated into and made part of any Final Judgment of Dissolution of Marriage. However, notwithstanding an incorporation of the Final Judgment, this Agreement shall not be merged in it but shall survive the Final Judgment and be binding on the parties for all time.

25. **BINDING EFFECT OF AGREEMENT**. All provisions of this Marital Settlement Agreement shall be binding upon the parties hereto, their respective personal or legal representatives, heirs, next of kin, executors, administrators or assigns.

26. **MODIFICATION AND WAIVER**. A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

27. **HEADINGS**. Any headings preceding the text of the paragraphs and subparagraphs contained in this Agreement are inserted solely for convenience and reference and shall not constitute part of this Agreement nor shall they affect its meaning or construction.

28. **INTERPRETATION**. It is the intention and desire of the parties that this Marital Settlement Agreement shall be interpreted in accordance with and governed by the laws of the State of Florida.

29. **CONSTRUCTION OF AGREEMENT IN DRAFTING**. This Agreement was negotiated by the parties and their counsel. It is hereby stipulated and agreed that this Agreement shall be construed as being jointly prepared and written by all the parties hereto. The fact that one


F.T.


P.T.

lawyer or the other prepared the actual final drafting shall not be construed as having been a document created by that attorney for purposes of having any ambiguities contained herein construed against that party.

30.     **SEVERABILITY**. If any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

31.     **ENFORCEMENT**.    Should it be necessary for either party hereto to seek enforcement of this Agreement through court proceedings, the prevailing party shall be entitled to recover from the other party all attorneys' fees and costs incurred in said enforcement proceeding.

32.     **VENUE**.   Venue for purposes of enforcement of any provisions in this Marital Settlement Agreement shall be Miami-Dade County, Florida.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals this _13th_ day of December, 2007

Witnesses to Wife:

_____

_____                         _____
                                                PRISCILLA NACHON TORRES

Witnesses to Husband:

_____

_____                         _____
                                                FRANK TORRES

F.T.                                            P.T.

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

**I HEREBY CERTIFY** that on this day, before me, an officer duly authorized to administer oaths and take acknowledgments, personally appeared PRISCILLA NACHON TORRES, known to me to be the person described in and who acknowledged before me that she freely and voluntarily executed the foregoing instrument.

**WITNESS** my hand and official seal in the County and State last aforesaid this _13_ day of December, 2007

My Commission Expires:

NOTARY PUBLIC, STATE OF FLORIDA

LINDA C. GRAF
Typed or Printed Name of Notary Public

LINDA C. GRAF
MY COMMISSION # DD 541541
EXPIRES: April 30, 2010
Bonded Thru Notary Public Underwriters

[√ one only]
√ Personally known
___ Produced identification
Type of identification produced_____

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

**I HEREBY CERTIFY** that on this day, before me, an officer duly authorized to administer oaths and take acknowledgments, personally appeared FRANK TORRES, known to me to be the person described in and who acknowledged before me that he freely and voluntarily executed the foregoing instrument.

**WITNESS** my hand and official seal in the County and State last aforesaid this _13th_ day of December, 2007

My Commission Expires:

NOTARY PUBLIC, STATE OF FLORIDA

LINDA C. GRAF
Typed or Printed Name of Notary Public

LINDA C. GRAF
MY COMMISSION # DD 541541
EXPIRES: April 30, 2010
Bonded Thru Notary Public Underwriters

[√ one only]
___ Personally known
√ Produced identification
Type of identification produced _Fla. Drivers License_
T620 * * *-** - 083-0

F.T.

P.T.