UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

Case No.: 11-36161-BKC-LMI
Chapter 13 proceeding

In Re:

**NACHON-TORRES, PRISCILLA,**

    Debtor(s).
_____/
**FRANK TORRES,**

    Plaintiff,
vs.                                      Adv.Proc.No.: 12-1130-BCK-LMI-A

**PRISCILLA NACHON-TORRES,**

    Defendant.
_____/

**PLAINTIFF'S REPLY TO DEBTOR'S AMENDED RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEBTOR'S CROSS MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, **Frank Torres**, ("Plaintiff") hereby files this his Reply to Debtor's Response to the Plaintiff's Motion for Summary Judgment and Response to Debtor's Cross Motion for Summary Judgment, and states:

1.    In reply to Priscilla Nachon-Torres' ("Debtor) initial Response and her Amended Response to the Plaintiff's Motion for Summary Judgment, the Plaintiff asserts that the Debtor's initial Response **(DE#31)** and Amended Response **(DE#33)** should be stricken and not considered by the Court in determination of the issues.

2.    On November 16, 2012, prior to trial, the parties agreed that all of the issues in this matter were legal in nature and could be determined by the Court through summary

judgment.

3. As a result, the parties filed an Ex-Parte Agreed Motion to Cancel Trial and Request for Briefing Schedule for Plaintiff's Motion for Summary Judgment **(DE#26)**. On November 19, 2012, the Court entered its Ex-Parte Agreed Order Granting Ex-Parte Agreed Motion to Cancel Trial and Request for Briefing Schedule for Plaintiff's Motion for Summary Judgment ("Agreed Order") **(DE#27).**

4. Pursuant to the terms of the Agreed Order, the Plaintiff was required to file his Motion for Summary Judgment on or before December 1, 2012. The Debtor was required to file her Response to the Plaintiff's Motion for Summary Judgment on or before December 21, 2012, and a Reply, if necessary, would be required to be filed by the Plaintiff on or before December 30, 2012.

5. The Plaintiff's Motion for Summary Judgment was filed on December 1, 2012. However the Debtor failed to file a Response on or before December 21, 2012. Instead, the Debtor filed her initial Response **(DE#31)** on December 26, 2012, with an Amended Response **(DE#33)** being filed on December 27, 2012. Further, the Debtor failed to seek an extension of this deadline prior to the expiration of same.

6. As a result of the Debtor filing her Response five (5) days after the deadline to file same, it is the Plaintiff's position that the Court should not consider any argument contained within the Debtor's Response to Plaintiff's Motion for Summary Judgment **(DE#31)** or Amended Response to Plaintiff's Motion for Summary Judgment **(DE#33)** in support.

7. The Debtor's response to the Debtor's Cross Motion for Summary Judgment is below. It mirrors the Plaintiff's Motion for Summary Judgment, but is filed in an abundance of caution.

8. On September 22, 2011, the Debtor filed for protection under Chapter 13 of the Bankruptcy Code. On September 22, 2011, the Debtor filed a majority of her Schedules and Statement of Financial Affairs.

9. Pursuant to Schedule A, the Debtor disclosed a possessory interest in real property located at 7841 SW 134th Street, Pinecrest, FL 33156. The disclosed value of the real property is $450,000.00. The Debtor further disclosed a lien in favor of Carlos and Fabiloa Nachon, the Debtor's elderly parents, in the amount of $224,000.00.

10. On the Debtor's Schedule F, the Plaintiff was disclosed as an unsecured creditor in the amount of $145,000.00. This debt was incurred as a result of the Marital Settlement Agreement discussed below.

11. Prior to the filing of the aforementioned Chapter 13 bankruptcy, the Debtor and Plaintiff were married. However, the relationship began to deteriorate, and on or about December 13, 2007, the parties negotiated a Marital Settlement Agreement (hereinafter referred to as "MSA").

12. Pursuant to the terms of the MSA, the Debtor agreed to pay a lump sum payment of one hundred forty five thousand dollars ($145,000.00) (hereinafter referred to as "MSA debt") to the Plaintiff.

13. The MSA debt was to be paid within sixty (60) days of the final judgment of dissolution of the marriage. If this amount was not paid, the debt accrued interest at seven

percent (7%) per annum. The parties further agreed the MSA debt was non-dischargeable in bankruptcy.

14.  The Debtor failed to pay the MSA debt within the prescribed timeframe, and has not paid any amount since the execution of same.

15.  At the time of the execution of the Marital Settlement Agreement, the Debtor had a net monthly income of approximately $7,100.00. ***See Schedule I, Debtor's Schedules Main Case DE#14.*** The Plaintiff's income was less than the Debtor's income at that time.

16.  In a Chapter 13 bankruptcy, a debtor can discharge most debts after the completion of the bankruptcy plan payments. ***See generally 11 U.S.C. § 1328***.

17.  However, among the debts that cannot be discharged are domestic support obligations. Pursuant to Section 523(a)(5) of the Bankruptcy Code, "[a] discharge under section 727… of this title does not discharge an individual debtor from any debt – (5) for a domestic support obligation."

18.  As defined in 11 U.S.C. § 101(14), a domestic support obligation is a debt owed to a former spouse that was incurred as a result of a property settlement agreement that is " in the nature of alimony, maintenance, or support." ***In re Benson*, 441 Fed. Appx. 650 C.A. 11(Fla.) 2011.**

19.  For a debt to meet the definition of a domestic support obligation it must be (a) owed to or recoverable by a former spouse, (b) in the nature of alimony, maintenance, or support, (c) established by an order of a court of record, and (d) not assigned to a nongovernmental entity.

20. Thus, a debt is a domestic support obligation if the parties intended it to function as support or alimony, even if they called it something else. ***Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir.2001)**.

21. The court's decision should also be informed by state law. **Id**. But there are other factors a court should consider as well. These factors include: (1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes. ***Benson* at 651, citing, *In re McCollum*, 415 B.R. 625, 631 (Bankr.M.D.Ga.2009)**.

22. At the time the parties negotiated the MSA, there existed several factors evidencing the MSA debt was intended to be in the nature of support. The initial factor for the Court to examine is the language used in the MSA, which would reflect the parties' intent.

23. Pursuant to paragraph 12.11, the parties stipulated that the MSA debt would be non-dischargeable[1]. Further, the parties stipulated that upon the non-payment of the MSA debt, the outstanding balance would accrue interest until paid in full.

24. The Court should also be persuaded by the placement of the agreement within the MSA itself. The parties have delineated several other headings in the MSA document that would be considered "property distribution". For example, the parties included the

---

[1] Counsel is not asserting that the MSA debt is non-dischargeable based upon the language contained within the

distribution of the couples' personal property in paragraph 12.8. It is not disputed that the value of these items would be dischargeable in bankruptcy. However, the MSA debt was contained within a separate heading and paragraph, which would evidence the intention, was to consider this debt as support, not as a property distribution.

25. Considering the language in the MSA, the placement of the actual terms of the MSA debt within the MSA, and the parties' intent that the MSA debt not be dischargeable in bankruptcy, is all evidence that the parties intended the MSA debt not to be subject to a bankruptcy discharge, and intended it to be support for the Plaintiff.

26. Next, the Court should look at the financial condition, and the disparity of same, at the time of the execution of the MSA. As shown on the Debtor's Schedules, in particular Schedule I, she was earning at least $7,100.00 per month.

27. Conversely, the income that the Plaintiff earned at this time was inferior to that of the Debtor. The MSA debt was intended by the parties to provide the Plaintiff with support, so that he would be able to properly care for the couple's minor children.

28. Accordingly, using the rationale in **Benson** and **McCollum**, as well as the parties intent during the time of the negotiation of the MSA, the amount being paid to the Plaintiff was clearly meant as a "domestic support obligation", and is non-dischargeable under 11 U.S.C. § 523(a)(5).

29. Accordingly, the debt owed to the Creditor, Frank Torres, should be found to be excepted from discharge under 11 U.S.C. § 523(a)(5), as it is a domestic support obligation. The Plaintiff respectfully requests that the Court enter an order determining that

---

document. However, this shows the intent of the parties at the time the document was drafted.

the debt referenced above is excepted from the Debtor's general discharge under 11 U.S.C. § 523(5).

**WHEREFORE** the Plaintiff, **Frank Torres**, respectfully requests that the Court enter final judgment in his favor finding that the debt owed is in the form of a "domestic support obligation", and is therefore excepted from discharge under 11 U.S.C. § 523(a)(5), plus grant such other and further relief as the Court deems just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by CM/ECF on the 30th day of December 2012 to:

Brett A Elam on behalf of Plaintiff Frank Torres
belam@brettelamlaw.com,
info@brettelamlaw.com;mreitzell@brettelamlaw.com;amanda@brettelamlaw.com

Michael A. Frank on behalf of Defendant Priscilla Nachon-Torres
pleadings@bkclawmiami.com, bkcpleadings@gmail.com

                                          BRETT A. ELAM, ESQ.
                                        BRETT A. ELAM, P.A.
                                        Attorney for Plaintiff
                                        105 S. Narcissus Avenue
                                        Suite 802
                                        West Palm Beach, FL 33401
                                        (561) 833-1113 (telephone)
                                        (561) 833-1115 (facsimile)

                                  By: _____/S/_____
                                        BRETT A. ELAM
                                        Florida Bar No. 576808